IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 13 |
| GREG C. SCOTT and | |
| KA SANDRA S. SCOTT, | Bk. No.: 10-33131 |
| | |
| MARCUS L. WHITE and | |
| JACQUELYN L. WHITE, | Bk. No.: 10-33300 |
| | |
| AND, | |
| | |
| JAMES F. SHEWMAKE and | |
| LAURIE L. SHEWMAKE, | Bk. No.: 10-32582 |
| Debtor(s). | |

**TRUSTEE'S BRIEF IN SUPPORT OF HIS**
**OBJECTION TO CONFIRMATION OF DEBTOR(S)' CHAPTER 13 PLAN**

COMES NOW, RUSSELL C. SIMON, Chapter 13 Trustee, by and through his Staff

Attorney, Tiffany M. Cornejo, and in support of his consolidated brief in support of his Objections to

Confirmation in the respective cases, states as follows:

**STATEMENT OF FACTS**

**In re Scott, Case No. 10-33131**:

The Debtors filed a voluntary petition under Chapter 13 of Title 11 of the United States

Code on December 4, 2010. Simultaneously with their petition, the Debtors filed their Schedules,

Statement of Financial Affairs, Statement of Currently Monthly Income (hereinafter referred to

as "Form B22C") and Chapter 13 Plan. Debtors are above-median income for their applicable

household size and state of residence. As a result, Debtors have listed their monthly expenses on

Form B22C. In doing so, Debtors deducted the full "transportation ownership/lease expense,"

pursuant to their Local Standards, on line(s) 28 and 29 in conjunction with line(s) 47a and 47c

which totals $496.00 for each of the Debtors' two vehicles. The Trustee has objected to this

1

expense amount arguing that the Debtors must be limited to their actual expense that is applicable for each vehicle. Specifically, the Debtors own a 2003 Ford F-250, with a monthly payment amount of $223.20 and a 2009 Chevrolet Cobalt, with a monthly payment amount of $248.27.

Should the Trustee prevail on his objection, the difference between Debtors' actual monthly expense for both vehicles combined ($471.47) and the amount currently deducted ($992.00) would result in an additional $31,231.80 to the allowed general unsecured creditors over the pendency of the instant case.[1] Currently, the Debtors are proposing to pay $0.00 to their allowed general unsecured creditors. Debtors have $77,787.76 in general unsecured debt, as of the date of this brief.

**In re White, Case No. 10-33300**:

The Debtors filed a voluntary petition under Chapter 13 of Title 11 of the United States Code on December 29, 2010. Simultaneously with their petition, the Debtors filed their Schedules, Statement of Financial Affairs, Form B22C and Chapter 13 Plan. Debtors are above-median income for their applicable household size and state of residence. As a result, Debtors have listed their monthly expenses on Form B22C. In doing so, Debtors deducted the full "transportation ownership/lease expense," pursuant to their Local Standards, on line(s) 28 and 29 in conjunction with line(s) 47a and 47c which totals $496.00 for each of the Debtors' two vehicles. The Trustee has objected to this expense amount arguing that the Debtors must be limited to their actual expense that is applicable for each vehicle. Specifically, the Debtors own a 2005 GMC Canyon, with a monthly payment amount of $134.42 and a 2008 GMC Acadia, with a monthly payment amount of $495.50.

---

1. The Debtors' Form B22C currently shows a negative DMI; however, the Debtors are amenable to amending

Should the Trustee prevail on his objection, the difference between Debtors' actual monthly expense for both vehicles combined ($629.92) and the amount currently deducted ($992.00) would result in an additional $20,176.80 to the allowed general unsecured creditors over the pendency of the instant case.[2] Currently, the Debtors are proposing to pay $0.00 to their allowed general unsecured creditors. Debtors have $38,076.75 in general unsecured debt, as of the date of this brief.

**In re Shewmake, Case No. 10-32582**:

The Debtors filed a voluntary petition under Chapter 13 of Title 11 of the United States Code on September 30, 2010. Simultaneously with their petition, the Debtors filed their Schedules, Statement of Financial Affairs, Form B22C and Chapter 13 Plan. Debtors amended their Form B22C on January 14, 2011. Debtors are above-median income for their applicable household size and state of residence. As a result, Debtors have listed their monthly expenses on Form B22C. In doing so, Debtors deducted the full "transportation ownership/lease expense," pursuant to their Local Standards, on line(s) 28 and 29 in conjunction with line(s) 47a, 47c, and 47e which totals $496.00 for each of the Debtors' two vehicles. The Trustee has objected to this expense amount arguing that the Debtors must be limited to their actual expense that is applicable for each vehicle. Specifically, the Debtors own a 2010 Honda Accord, with a monthly payment amount of $483.38 and a 2008 Chevy Silverado, with a monthly payment amount of $356.54.

Should the Trustee prevail on his objection, the difference between Debtors' actual monthly expense for both vehicles combined ($839.92) and the amount currently deducted

---

pursuant to Trustee's objection no. 14B which will provide a positive DMI.
2. The Debtors' Form B22C currently shows a negative DMI of $25.80; thus, the $20,176.80 is the amount realized after deducting the negative DMI of $25.80.

($992.00) would result in an additional $9,124.80, for a total of $24,081.00[3] to the allowed general unsecured creditors over the pendency of the instant case. Currently, the Debtors are proposing to pay $19,072.00 (pursuant to § 1325(a)(4)) to their allowed unsecured creditors. Debtors have $60,902.23 in general unsecured debt, as of the date of this brief.

## ISSUE BEFORE THE COURT

Whether Debtors who make secured debt payment(s) on their motor vehicles may deduct the full ownership/lease expense for that vehicle when calculating their projected disposable income pursuant to 11 U.S.C. § 1325(b)(3) when the actual expense amount is less.

## SUMMARY OF ARGUMENT

The Supreme Court, quoting Congress, informed all bankruptcy practitioners and other interested parties alike that Congress adopted the means test for the following purpose:

> "[T]o help ensure that debtors who *can* pay creditors *do* pay them."
> Under BAPCPA, "debtors [will] repay creditors the maximum they
> can afford." *In re Ransom*, 131 S. Ct. 716, 721 (2011). (Citations
> omitted.)

In an effort to ensure both the spirit and *purpose* of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") is carried out, the Trustee objects to confirmation of the Debtors' Chapter 13 Plans, as each fails to pay in all their disposable income by deducting a transportation ownership expense than is greater than the actual payment amount. Specifically, the Trustee argues that when interpreting a debtor's reasonably necessary expenses pursuant to § 707(b)(2)(A)(ii)(I), a debtor is limited to his "applicable," or suitable amount under the category for which he incurs an expense. This interpretation furthers the purpose of BAPCPA.

---

3. The current pool provided by Debtors is pursuant to § 1325(a)(4); should the Trustee's objection be sustained, the Debtors would be required to pay a pool pursuant to § 1325(b)(1)(B), as it would be higher than the liquidation amount, which is the $24,081.00.

## ARGUMENTS[4]

**I.  THE PLAIN LANGUAGE OF THE BANKRUPTCY CODE MANDATES THAT A DEBTOR WHO OWNS A VEHICLE AND HAS A SECURED DEBT PAYMENT ON THAT VEHICLE MAY NOT CLAIM THE OWNERSHIP EXPENSE SPECIFIED IN THE IRS STANDARDS.**

### *Giving Effect to Every Word of a Statute Wherever Possible.*

#### A.    "APPLICABLE"
(ONE INTERPRETATION)

When interpreting any statute, Courts must give effect to every word of a statute wherever possible, and must further ensure that each word carries meaning. *Ransom,* 131 S. Ct. 713, 724 (2011). Not only do Amicus, and presumably the Debtors, agree with this, but Amicus further acknowledge that when the statute's language is plain, "the sole function of the courts is to enforce the statute according to its terms" where the disposition required by the text is not absurd. *Amicus Curiae Brief*, at 3, *citing, Ron Pair*, 489 U.S. at 241; *Union Planters*, 530 U.S. at 6. Although Amicus attempts to guide this Court to interpret the relevant sections in line with the above premise, their analysis, as well as the Debtors,' is misplaced.

The Bankruptcy Code defines a debtor's disposable income as his "currently monthly income received by the debtor . . . less amounts *reasonably necessary* to be expended." *11 U.S.C. § 1325(b)(2)* (emphasis added). The statute goes further to state that, "[a]mounts reasonably necessary to be extended under paragraph (2) . . . shall be determined in accordance with . . ." § 707(b)(2)(A) and (B) for debtors with above-median income.  *§ 1325(b)(3).*

Section 707(b)(2)(A)(ii) provides, in pertinent part, that,

> (I) The debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories

---

4. To simplify the Court's review of the substantive arguments on this issue, the Trustee has elected to mirror the format of the amicus curia brief, filed by NACBA, whenever possible.

> specified as Other Necessary Expenses issued by the Internal Revenue
> Service for the area in which the debtor resides, . . . Notwithstanding any
> other provision of this clause, the ***monthly expenses*** of the debtor ***shall
> not include any payments for debts***. (Emphasis added.)

Amicus focuses its argument on the concept that a debtor is allowed the transportation ownership

expense or actual monthly average expense, whichever is greater. Specifically, Amicus reference

the Supreme Court's interpretation of section 707(b)(2)(A)(ii)(I) as cited in *Ransom*,

> Our interpretation of the statute, however, equally avoids conflating
> "applicable" with "actual" costs. **Although the expense amounts in the
> Standards apply only if the debtor incurs the relevant expense, the
> debtor's out-of-pocket cost may well not control the amount of the
> deduction.** If a debtor's actual expenses exceed the amounts listed in the
> tables, for example, the debtor may claim an allowance only for the
> specified sum, rather than for his real expenditures. For the Other
> Necessary Expense categories, by contrast, the debtor may deduct his
> actual expenses, not matter how high they are. Our reading of the means
> test thus gives full effect to "the distinction between 'applicable' and
> 'actual' without taking a further step to conclude that 'applicable' means
> 'nonexistent.'" *In re Ross-Tousey*, 368 B.R. 762, 765 (Bkrtcy. Ct. ED
> Wis. 2007) rev'd, 549 F.3d 1148 (C.A. 7 2008). (Emphasis added.)

*Amicus Brief*, at 5, citing *Ransom*, 131 S. Ct. at 727-728.

The expenses within the Internal Revenue Service's National and Local Standards include

expenses for food, clothing, apparel, personal care items, and other miscellaneous items, out-of-

pocket health care expenses, housing and utilities, transportation operating costs and

transportation ownership costs. Internal Revenue Manual Section 5.15.1.8 and 5.15.1.9,

http://www.irs.gov/irm/part5/irm_05-015-001.html#d0e1012.  The Other Necessary Expenses

issued by the Internal Revenue Service consists of accounting and legal fees, charitable

contributions, child care, education, education, life insurance, secured or legally perfected debts,

unsecured debts, student loans, etc. Internal Revenue Manual Section 5.15.1.10,

http://www.irs.gov/irm/part5/irm_05-015-001.html#d0e1381.

As stated by the Supreme Court in *Ransom,* and acknowledged by Amicus, *supra* at 5, a

6

debtor may not claim an expense under the National or Local Standards *unless they incur some expense* in the relevant category. The Supreme Court provides an example of this issue by articulating that an above-median debtor's whose relevant expenses *exceed* the amounts listed in the table, the debtor would clearly be limited to the specified sum. *Ransom*, at 727-728. The Supreme Court specifically refused to address what expense amount would be "applicable" if the debtor's actual expense was less than the National or Local Standards for the vehicle ownership expense. See *Ransom*, at footnote 8. As a result, this Court must now determine whether the full amount of the National or Local Standard expense is reasonably necessary, even if the debtor does not pay that full amount.

The Supreme Court has provided this Court with a firm base to begin. In the Ransom opinion, "applicable" was defined as "appropriate," "relevant," "suitable," or "fit." *Ransom,* at 724. The Supreme Court further stated that a debtor may claim a deduction from a National or Local Standard table . . . if but only if that deduction is appropriate for him. *Ransom,* at 724. In reaching this decision, the Supreme Court noted that their interpretation is supported by (1) the statutory context that the debtor's expense(s) be *reasonably necessary*; (2) avoiding the anomalous result of granting preferential treatment to individuals with above-median incomes, given it is clear that below-median income debtors are prohibited from receiving a deduction for an expense they do not incur; and (3) the purpose of BAPCPA. *Ransom,* at 724-725. Consequently, these three objectives would be further advanced by interpreting "applicable" to limit the actual expense amount that is deducted to an *amount that is applicable* to the debtor, as the Trustee suggests, and not simply utilized to determine whether the entire categorical deduction applies to the debtor.

In an effort to substantiate their position, Amicus first argues that "monthly expense

7

amount specified" represents the entire dollar amount for that category. *Amicus Brief*, at 5-6.

Accepting this interpretation of that portion of the section would be inaccurate. Such an

interpretation fails to consider the meaning of the word "applicable" in that sentence.  Foreseeing

this argument, Amicus asserts that based upon the *Ransom* opinion, "applicable" refers only to

whether the debtor will incur that *kind* of expense during the life of the plan. *Amicus Brief*, at 6.

The Trustee does not dispute this interpretation of Ransom, and in fact, relies on it in conjunction

with the Supreme Court's statements in footnote 8. *Supra* at 7. The Supreme Court took its

analysis as far as it was obligated to go to reach its decision in *Ransom*, while ensuring it did not

conclude contrary to the statutory context, create an absurd result, or reach a conclusion at odds

with BACPA's purpose. Thus, the Supreme Court aided in defining the relevance and purpose of

"applicable," thereby closing the door on any broad interpretation of that section; however, the

Supreme Court neither stated nor implied that the limitations of "applicable" end there. In fact,

the implication is quite to the contrary.

*Giving Effect to Every Word of a Statute Wherever Possible.*

### B.    THE "NOTWITHSTANDING" SENTENCE
(ANOTHER INTERPRETATION)

In further support of their position, the Debtors and Amicus argue that because section

707(b)(2)(A)(ii)(I) does not specifically utilize the language in the Internal Revenue Manual

("IRM"), this demonstrates that Congress did not intend for Local Standards to be limited to a

debtor's actual expense. Instead, debtors should consume the entire Ownership Costs deduction

if they satisfy the threshold question of whether they actually sustain any Ownership Cost.  More

specifically, Amicus argues that this section delineates between applicable and actual expenses

and this language contrasts with the language in the IRM. Amicus specifically notes the language

in the IRM that states, "Maximum allowances for housing and utilities and transportation, known

8

as Local Standards, vary by location. In most cases, the taxpayer is allowed the amount actually spent, or the local standard, whichever is less." See *Amicus Brief*, pages 6-7. Amicus further argues that because this language is not included, it was not the intent of Congress to limit the transportation expense. However, this argument is fallible.

The Debtors also argue that had Congress wanted to distinguish the Local Standards vehicle ownership expense from the other Local Standard deductions it could have done so. To strengthen their argument, Debtors assert that under the doctrine of *expression unius est exclusion alterius* ("the express mention of one thing, excludes all others") Congress failed to make this distinction, thus the Debtors' interpretation is the appropriate one. See *Debtors' (In re Scott) Brief,* pages 7-8.

The Trustee argues that Congress did just this. Albeit, the language or method utilized is not that chosen by either Amicus or Debtors, Congress nonetheless distinguished the transportation ownership expense (as well as specific categories within Other Necessary Expenses) from the other categories within Local Standard deductions. Specifically, Congress did so by the inclusion of the sentence, "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts" (hereinafter referred to as the '"notwithstanding" sentence'). Both Amicus, as well as the Debtors, fail to give any explanation to the sentence that modifies what expenses constitute applicable and actual for above-median debtors -- the "notwithstanding" sentence within section 707(b)(2)(A)(ii)(I).

At its basic construction, the means test provides that a debtor's reasonably necessary expenses shall be the ***applicable*** National and Local Standard expenses and the ***actual*** Other Necessary Expenses . . . ***Notwithstanding***, any other provision, *those monthly expenses shall not include any payments for debts*. See *Section 707(b)(2)(A)(ii)(I)*. One interpretation of this section

9

is to state that a debtor may deduct all the National, Local and Other Necessary Expenses they

incur, *unless* such expense is for a debt. Thus, a debtor who owns a vehicle, but does not have a

vehicle/lease payment would be allowed to deduct the full amount ($496.00). This argument was

specifically struck down by the Supreme Court in *Ransom*, "[T]he 'notwithstanding' sentence by

its terms functions only to exclude, and not to authorize, deductions. It cannot establish an

allowance for non-loan or lease ownership costs that no National or Local Standard covers."

*Ransom,* at 729. As a result, the only logical interpretation would be the converse, that a debtor

who owns a vehicle and does have a vehicle/lease expense is not allowed to deduct any portion

of the standard expense, as that expense consists of a "debt." Accordingly, this sentence can only

be read to modify what deductions under the National, Local and Other Necessary expenses are

"applicable." Therefore, the correct statutory interpretation of section 707(b)(2)(A)(ii)(I) is that a

debtor's reasonably necessary expenses consist of those expenses under the National and Local

Standards, as well as the Other Necessary expenses that a debtor actually has, but that expense

may not be for a debt. This interpretation not only strikes a balance between the statutory

construction and the Supreme Court's decision in *Ransom*, but also furthers the purpose of

BAPCPA and prevents any absurd result in doing so.

Generally applied, a debtor who has a debt payment: a mortgage, a vehicle payment, a

domestic support obligation payment, student loan payment or other unsecured debt, as

examples, as well as other common living expense: food, clothing, utilities, life insurance, etc.,

may deduct the full amount of those expenses within the National and Local Standards and Other

Necessary expense categories, ***except*** for those categories that consist of a payment for a debt:

mortgage payment, car payment, domestic support obligation payment, student loan payments or

other unsecured debt payments under § 707(b)(2)(A)(ii)(I). A debtor is, however, allowed the full

10

deduction under the Standards and Other Expenses for food, clothing, etc. Thus, the "notwithstanding" sentence modifies "applicable" and if a debtor has a "debt" payment for any of the given categories, that category or expense is not "applicable" to the debtor and the debtor may not deduct that expense.

Nevertheless, the analysis cannot stop there; the debtor is not without a remedy to be able to reduce his disposable income by those debts that the Code indicates he may. Specifically the debtor is permitted to deduct the actual amount of his legally perfected secured payments (e.g. car payments) and priority payments (e.g. domestic support obligation payments or delinquent tax payments), as these categories are included in Other Necessary Expenses. Although the statutory construction of section 707(b)(2)(A)(ii) above appears to prevent a debtor from doing so, it is clear that the actual expense amount for secured and priority payments was not to be excluded.

First, it is clear that Congress intended for debtor's actual secured and priority debt expenses to be deducted from his disposable income, as it provided a means of calculating what each payment amount should be. See *sections 707(b)(2)(A)(iii) and (iv)*. This statutory interpretation not only gives effect to the "notwithstanding" sentence, but it is supported by (1) the statutory context that the debtor's expense(s) be *reasonably necessary,* as it prohibits a debtor from deducting an expense amount greater than what he is actually paying; (2) avoids the anomalous result of granting preferential treatment to individuals with above-median incomes, given it is clear that below-median income debtors are prohibited from receiving a deduction for an expense (or amount) they do not incur; and (3) supports and enforces the purpose of BAPCPA – to maximize the amounts a debtor repays to his creditors.

Second, although refusing to address how the "notwithstanding" sentence affects the

11

vehicle-ownership deduction (see *Ransom, footnote 11)*, the Supreme Court specifically stated that when interpreting the context of allowing deductions under the National and Local Standards and Other Necessary Expense categories with the "notwithstanding" sentence, "any friction between the two likely reflects only a lack of attention [by Congress] to how an "across-the-board exclusion of debt payments would correspond to a particular IRS allowance." *Ransom*, at 728-729. Thus, supported with the Supreme Court's acknowledgement that the "notwithstanding" sentence limits deductions and that Congress may not have stated this limitation as effectively as it could have, the Trustee's interpretation not only gives effect to the "notwithstanding" sentence, it makes sense in the context of the entire section. Neither the Debtors' or Amicus' interpretation gives any effect to the "notwithstanding" sentence, the failure to do so contradicts the first step of statutory instruction – giving effect to every word.

The Trustee does note that, in its brief in *Ransom,* the United States offers alternative views on the affect of the "notwithstanding" sentence. One perspective stated by the United States was, the "notwithstanding" sentence applies only to unsecured debts given that the Other Necessary Expense categories include deductions for unsecured debts. See *Amicus Curiae Brief for United States,* 2009 U.S. Brief 907, 9. But, this interpretation is easily disputed. Congress obviously knows the difference between unsecured and secured debts, and the importance of specifically stating each, especially in statutes pertaining to the Bankruptcy Code. A very basic principle of statutory interpretation is that "Congress means what it says, and says what it means." Under this principle, had Congress meant solely *unsecured* debts were not to be included as a deduction, it would have said "unsecured debts" and not simply "debts." It did not, therefore that is not what Congress meant.

Another interpretation provided by the United States was the exclusion of "payments for

debts" serves to avoid double-counting of expenses that fall within two different expense provisions of the means test. See *Amicus Curiae Brief for United States* at 9. Thus, a debtor who has a car ownership expense is prohibited from deducting the expense under the Local Standards as well as the actual secured debt payment under Other Necessary Expenses. Although a more acceptable interpretation, had this been Congress's intent it simply could have stated, "no expense may be claimed twice." Again, it did not; therefore the Trustee's interpretation is more likely true. Furthermore, this interpretation does not exclude deductions for unsecured payments; as this interpretation is limited to excluding those payments that are considered to be "double-dipping." Therefore, Congress must have meant something more than what the United States suggests in this interpretation. See *also, In re Hardacre,* 338 B.R. 718, 726-727 (Bankr. N.D. Tex. 2006), *expressing the position the United States takes in its brief*.

*Giving Effect to Every Word of a Statute Wherever Possible.*

### C.    "REASONABLY NECESSARY" AND SECTION 1325(b)(1)(B)

The Debtors argue that this Court has previously determined that the entire ownership expense under the Local Standards is *reasonably necessary*. See *Debtors' Brief (In re Scott),* at 7, *citing, In re Barrett*, 371 B.R. 855, 858 (Bankr. S.D. Ill. 2007). The Trustee acknowledges that this was that Court's opinion *at that time*. However, what is not apparent from Debtors' argument is that this Court reached that decision by reading section 707(b)(2)(A)(ii) to conclude that a debtor is also permitted the full ownership/lease expense whether they have a vehicle payment at all. *Barrett* at 859 (citations omitted). This position is unambiguously rejected by the Supreme Court in *Ransom*. Moreover, in reaching its decision in *Barrett,* this Court states, "[t]here is no provision for reducing the specified amounts to the debtor's actual expenses, nor does the statute suggest that the amounts specified in the Standards are to be used only as

13

maximum amounts." *Barrett* at 858. This is incorrect, the creditor failed to argue the implications

of the "notwithstanding" sentence, and therefore, the Court did not address its effect on

determining the expense amount. The Trustee asserts this Court would have ruled differently had

the creditor argued the Trustee's position herein. The "notwithstanding" sentence is the provision

that requires the reduction or elimination of the applicable *debt* payment amounts under the

National and Local Standards.

  Moreover, the Supreme Court specifically stated, "Expenses that are wholly fictional are

not easily thought of as reasonably necessary." *Ransom* at 727. The instant cases are

distinguishable from *Ransom*, in that they each actually incur some expense in the transportation

ownership expense; however, the Supreme Court further stated, that "[the debtors'] interpretation

would run counter to the statute's overall purpose of ensuring that debtors repay creditors to the

extent they can . . ." *Ransom* at 727. In Ransom, the Supreme Court took issue with the debtor

declaring an expense "reasonably necessary" that shielded $28,000.00 from his creditors.

Similarly, the Debtors in the instant case (the Scotts, Whites, and the Shewmakes) are shielding

more than $31,000, $20,000 and $9,000 respectively. Clearly this is not and cannot be seen as a

"reasonably necessary" expense for purposes of reducing their disposable income.

  Additionally, there will indubitably be other cases when the amount being "shielded" will

be more than $31,000. For instance, the transportation ownership/lease expense for cases filed on

or after March 15, 2011 is $496 for one car and $922 for two cars. Therefore, a household size of

two people who own two vehicles, both with secured payments of $100 per vehicle, would have

the ability to shield $42,000 over the course of their bankruptcy from creditors. This clearly is not

only unreasonable, it is absurd and counter to the mandate of BAPCPA as stated in the opinion

by the Supreme Court of the United States.

14

Moreover, under § 1325(b)(1)(B), a debtor is obligated to provide for payment of all of the debtor's projected disposable income received during the applicable commitment period. Allowing a debtor to shield tens of thousands of dollars from his creditors is in direct conflict with this statute. The Supreme Court declined to infer from § 1325's incorporation of § 707 that Congress intended to eliminate, *sub silentio*, the discretion that courts previously exercised when projecting disposable income to account for known or virtually certain changes. *Hamilton v. Lanning*, 130 S. Ct. 2464 (U.S. 2010). Although the context of this assertion by the Supreme Court deals with changes in the debtor's income from the six-months before filing to the date of filing, the underlining notion is that courts are allowed to utilize their discretion when determining a debtor's income and expenses. Specifically, the means test is a way to measure the debtor's disposable income. *Ransom*, at 725. Under the analysis in *Lanning*, the means test is the starting point to determine a debtor's income and expenses, but courts are allowed to utilize their discretion to adjust that same debtor's income and expenses by changes it knows to be true. This interpretation is not only consistent with the Trustee's interpretation, but also ensures compliance with § 1325(b)(1)(B), that a debtor pay in all their disposable income during their applicable commitment period.

## II. OTHER COURT DECISIONS PRIOR TO *RANSOM* AND THE ONLY POST-*RANSOM* CASE, NOT ON POINT, INCORRECTLY CONCLUDE THAT DEBTORS WHO OWN VEHICLES AND MAKE A LOAN OR LEASE PAYMENT MAY DEDUCT THE FULL AMOUNT SPECIFIED IN THE LOCAL STANDARDS.

### A.   POST-*RANSOM* CASE

Amicus argue that the only post-*Ransom* case is squarely on point. See *Amicus Brief*, page 8, *referencing In re Miranda,* 2011 Bankr. LEXIS 1007 (Bankr. D.P.R. March 9, 2011). Amicus argue that the *Miranda* Court addressed the same issue as in the cases before this Court,

namely whether the debtors should be allowed to deduct the entire Ownership expense amount, for an encumbered vehicle, under the Local Standards or whether the debtors' are limited to the actual payment amount. This interpretation of *Miranda* is simply incorrect. Although the broad issue of whether a debtor is allowed their actual expense amounts under the National and Local Standards was before the Court, none of the expenses raised included categories that are virtually known to be "debts." Specifically, in *Miranda*, the Trustee objected to the debtors' disposable income being reduced by the National and Local Standard expense amounts for "water," "food," "clothing," and "food at work."

The Trustee's position herein is that the "notwithstanding" sentence modifies a debtor's ability to claim the National and Local Standard expenses and the Other Necessary Expenses that are for a "debt." The Trustee asserts that the *Miranda* Court properly concluded the way it did in regards to the expenses at issue.

The *Miranda* Court specifically concluded that, "[a debtor] may deduct the full amount of applicable expenses under the IRS's National and Local Standards if they provide evidence to the Trustee that they have some expense for that particular category, irrespective of the fact that their actual expenses for certain categories are lower." *Miranda,* 2011 Bankr. LEXIS 1007 (Bankr. D.P.R. March 9, 2011). This case is easily distinguishable from the instant cases however, because the *Miranda* Court did not discuss the sentence that modifies the applicability of specific expenses for the National and Local Standard categories – the "notwithstanding" sentence. Tied to this, however, is the fact that the *Miranda* Court did not need to; as stated above, the expenses at issue did not consist of a debt. This is where the Debtors and Amicus assertions of the Trustee's position are flawed.

Amicus suggest that this Court's holding in *In re King*, regarding an above-median

16

debtor's ability to enjoy certain benefits – additional deductions for housing, transportation, and other necessary expenses, supports their position in these cases. See *Amicus Brief* at 12, *citing, In re King,* 439 B.R. 129, 139 (Bankr. S.D. Ill. 2010). The Trustee's position is that this is true, with regard to certain expenses – those expenses this Court suggested in *King*. Should an above-median debtor sustain an actual expense that is less than those under the National and Local Standards, the debtor is allowed to deduct the entire amount, *unless that expense consists of payment for a debt*. Thus, an above-median debtor is allowed the National or Local Standard expense for food, transportation (operation expense), clothing, etc. This interpretation is a more logical explanation for this Court's meaning in *King*.

Furthermore, the Trustee asserts that interpreting section 707(b)(2)(A)(I) as he suggests is in line with the Supreme Court's opinion regarding the choice made by Congress to tolerate the occasional "peculiar" result. *Ransom*, at 729. It certainly would be a greater rarity for an above-median income family to use less of the food expense, transportation operations expense or clothing expense than allowed, than it would for them to use the entire transportation ownership expense. Should this Court agree with the Amicus and Debtors' position, this peculiarity will not be occasional in any sense of the word – it will be a common occurrence.

## B.     OTHER CASE LAW

Both Debtors and Amicus provide this Court with cases that support their position: *In re Farrar-Johnson,* 353 B.R. 224 (Bankr. N.D. Ill. 2006) (a plain reading allows a deduction for the amount in Local Standards regardless of the actual expense); *In re Carlton*, 362 B.R. 402 (Bankr. C.D. Ill. 2007) (same); *In re Reinstein*, 393 B.R. 838 (Bankr. E.D. Wis. 2008) (same); *In re Barrett*, 371 B.R. 855, 858 (Bankr. S.D. Ill. 2007) (*supra* at 13); *In re Briscoe*, 374 B.R. 1 (Bankr. D.D.C. 2007).

17

The Trustee distinguishes each of these cases by first noting that each was decided before the Supreme Court's opinion in *Ransom*; thus they were unaware of the key points from that opinion that the Trustee has noted herein, specifically, the *purpose* of BAPCPA coupled with the issue of determining the amount of the vehicle ownership expense a debtor is allowed to claim. More importantly, to the best of the Trustee's knowledge, no court has analyzed the amount of the expense under the National and Local Standards *and* addressed how the "notwithstanding" sentence applies to that question. This is what this Court must do now.

Additionally, Debtors assert that the Sixth Circuit, in *Baud v. Carroll*, supports their position,

> Thus, the Appellees should be permitted to deduct their mortgage payment in accordance with the formula set in § 707(b)(2)(A)(iii), unless there is some other basis other than the disposable-income test for disallowing the deduction. Concluding otherwise would limit above-median-income debtors to deducting the categories of expenses set forth in § 707(b)(2)(A) & (B) – a result that is required for both below-median-income debtors – but at the same time would not allow them to take full advantage of the amounts that those subsections would permit them to deduct. We see nothing in *Lanning* – nor anything in § 707(b)(2)(A)(iii) – that would support such a result.

634 F.3d 327, 348 (6th Cir. Mich. 2011).

The Trustee has never disputed that an above-median-income debtor is permitted to deduct his *actual* expense amount for those expenses that consist of a debt payment; but he does dispute deducting any amount(s) above the actual amount.  The 6th Circuit did not and was not required to determine what amount under the National and Local Standards a debtor is allowed to deduct; and to the extent the 6th Circuit suggests a debtor is allowed the full amount, it did not do a full analysis, as it did not consider the implications of the "notwithstanding" sentence.

### III. CONGRESSIONAL INTENT DEMONSTRATES THAT DEBTORS ARE NOT ENTITLED TO THE FULL DEDUCTION FOR OWNERSHIP COSTS WHEN THEIR ACTUAL AMOUNT IS LESS.

Amicus and Debtors[5] argue that limiting judicial discretion was one of the foremost goals in enacting BAPCPA and that the purpose of bankruptcy protection – a fresh start – was not overridden by BAPCPA or *Ransom*. See *Amicus Brief* at 11-12, and *Debtors' Brief* (*In re Zerkel*) at 8-9. The Trustee asserts that this position, although true in some respects, is misplaced.

In *Ransom*, the Supreme Court affirmed that the purpose of enacting BAPCPA was to ensure that debtors repay creditors the maximum they can afford. *Ransom* at 725. The Supreme Court also went on to say, that it doubts Congress intended for debtors to receive deductions for expenses they do not sustain – the very thing that inspired Congress to enact the means test. *Ransom* at 725. Additionally, the Supreme Court declared that, "[the] purpose is best achieved by interpreting the means test, consistent with the statutory text to reflect a debtor's ability to afford repayment (rejecting an interpretation of the Bankruptcy Code that 'would produce the senseless result of denying creditors payments that the debtor could easily make)." *Ransom* at 725. The Supreme Court asserts this as the purpose of BAPCPA in many other instances in its opinion. See pages 721, 727, etc. Although the Trustee does not dispute that an important purpose of filing bankruptcy is to afford the honest debtor a fresh start, however, it is clear, from *Ransom*, a debtor who so chooses to receive a fresh start must first pay all he can in order to do so. Moreover, nowhere did the Supreme Court discuss the necessity of having to measure these two purposes together, thus allowing bankruptcy courts alike to conclude that a "fresh start" may only be given to those debtors that adhere to the ultimate purpose of the amendments – paying all they

---

5. See, *In re Zerkel*, Case No. 11-30061. Debtors request to file a brief in opposition to Trustee's objection to confirmation, however no actual briefing schedule was set. Additionally, the Trustee will likely withdrawal his objection to confirmation in this case after the deadline to file claims has passed as debtors will have to provide a 100 percent repayment plan.

can afford to pay.

Although the Trustee agrees that judicial discretion is limited in some instances (see *supra* at 16-17, a debtor may claim the entire standard expense amount for food, clothing etc.), the Supreme Court in *Lanning*, noted that courts may utilize their discretion for known or virtually known changes. See *supra* at 14-15. Some courts, as well as the Debtors, have concluded that utilizing judicial discretion is limited to only those changes in income that are known or virtually certain. This is simply incorrect.

The 7th Circuit noted the purpose of Chapter 13 "is to balance the need of the debtor to cover his living expenses against the interest of the unsecured creditors in recovering as much of what the debtor owes them as possible, we cannot see the merit in throwing out undisputed information, bearing on how much the debtor can afford to pay, that comes to light between the submission and approval of a plan of reorganization." *In re Turner*, 574 F.3d 349, 355 (7th Cir. Ind. 2009). Additionally, the 7th Circuit, in applying the Supreme Court's opinion in *Lanning*, stated, "that while the calculation of 'disposable income' in the plan submitted by the debtor is the starting point for determining the debtor's 'projected disposable income' . . . the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances. *Turner*, at 356 (citations omitted).

Furthermore, this Court has ruled that a debtor may not claim an expense, that although section 707(b)(2)(A)(ii) appears to allow, when it is known that the debtor will not sustain that expense, the debtor must provide for the surplus in the plan. See, *In re Dickerson*, Case No. 09-30139, docket no. 45 (Bankr. S.D. IL, April 15, 2010) (Oral order sustaining the Trustee's objection to confirmation on the basis that where a debtor is deducting the full amount of his 401k loan payment from his disposable income over the entire plan duration, notwithstanding its

20

allowance under § 707(b)(2)(A)(ii); the debtor may pay the balance owed on the loan, but any disposable income above the *actual* expense is required to be paid into the plan). This ruling is exactly on point with the issue before the Court today. This Court in *Dickerson* knew, at filing, that the debtors would not sustain the full amount of the expense they were allowed to deduct, it balance the purpose of BAPCPA with the statutory context and concluded the debtors must pay in all they could in fact afford to pay.

In summary, limiting a debtor to claim the actual amount of their ownership/lease expense is exactly what Congress had in mind when it drafted BAPCPA, specifically § 707(b)(2)(A)(ii). Not only is this apparent from the statutory context, this interpretation enforces the purpose of BAPCPA – to ensure a debtor pays back all he can afford. Moreover, the Supreme Court has concluded that bankruptcy courts may utilize their discretion when determining what expenses are reasonably necessary and this Court, as well as the 7th Circuit, has recognized such an interpretation in recent opinions and rulings.

## CONCLUSION

For the foregoing reasons, the Trustee prays this Court for an Order sustaining his objections, requiring an amended Form B22C to be filed by each debtor, and an amended plan to provide for payment of all of the debtors' disposable income into the plan, and for all other relief this Court deems just and equitable.

Respectfully submitted,

/s/Tiffany M. Cornejo
TIFFANY M. CORNEJO, ARDC #6296136
RUSSELL C. SIMON, Chapter 13 Trustee
33 Bronze Pointe, Suite 110
Swansea, IL 62226
Telephone: (618) 277-0086
Telecopier: (618) 234-0124
tiffanyc@simonch13trustee.com

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a true and correct copy of the above and foregoing document was mailed to the following interested parties who have not been electronically notified this 23rd day of May, 2011, with the correct postage prepaid and deposited in the U.S. Mail.


Greg & Ka Sandra Scott
319 Monroe
East Alton, IL 62024


James & Laurie Shewmake
232 Wonderland
Alton, IL 62002


Marcus & Jacquelyn White
2753 Lake Lucerne Dr.
Belleville, IL 62221

                                                 /s/Amanda M